**SOUTHERN LAND TITLE CORPORA-TION, Petitioner,**

v.

**Honorable Lansing L. MITCHELL, Judge of the United States District Court for the Eastern District of Louisiana, Respondent.**

**No. 24447.**

United States Court of Appeals
Fifth Circuit.
April 6, 1967.

13. Senate Committee Report accompanying H.R. 8300, 1954–3 U.S.Code Cong. & Admin.News, p. 4925.

Robert M. Welch, Jr., Houston, Tex., James J. Morrison, Cicero C. Sessions, New Orleans, La., for petitioner.

John F. Connolly, Moise S. Steeg, Jr., Lee C. Grevemberg, Clifton S. Carl, J. Barnwell Phelps, J. B. Kiefer, Harry T. Howard III, Gibbons Burke, New Orleans, La., Tom H. Matheny, Hammond, La., Mettery I. Sherry, Jr., New Orleans, La., Donald S. Zuber, Baton Rouge, La., for respondent.

Before WISDOM and GODBOLD, Circuit Judges, and McRAE, District Judge.

PER CURIAM:

The sole question for decision in this mandamus proceeding is whether the district court abused its discretion in dismissing the debtor corporation's petition for reorganization under Chapter X of the Bankruptcy Act without hearing oral testimony. We hold that on the face of the record as it existed February 3, 1967, the district court did not abuse its discretion in disapproving and dismissing the petition. If the court erred, Congress has provided a remedy by way of appeal.

The record shows that the district judge did not act arbitrarily. The case fell to the Honorable Lansing L. Mitchell. December 8, 1966, the day after the case was filed, Judge Mitchell declined to approve the petition. Instead he fixed a hearing for January 12, 1967, on the issue of the debtor's good faith in filing its petition. January 9, after several informal conferences with lawyers for the debtor and for various creditors, the district judge conducted a pre-trial conference. When the January 12 hearing opened, the debtor's attorney announced that he was not prepared to try the issue of good faith. He asked that the case be continued until February 3. It is evident that the reason for the continuance was the possibility of the debtor's obtaining a commitment for successful refinancing. After a recess to enable the attorneys to work out an agreement, the debtor's attorney and attorneys for certain creditors dictated into the record a stipulation. Southern Land Title Corporation, speaking through its president, Mr. Sam Recile, and represented by its attorney agreed to dismiss the petition February 3, whether successful or unsuccessful in obtaining a commitment for refinancing.[1] Numerous creditors and

---

1. The stipulation, in pertinent part, provides:

"It is agreed that during the twenty-day period of status quo of this corporation, including the supervision of its assets and care by the temporary receiver will be maintained, as well as any outstanding restraining order or temporary injunction whatever the character of it may be * * * ¶ Provided that during this twenty-day period, the debtor produces a commitment from a lending agency capable of providing for the furnishing of funds, which commitment is conditioned only upon the validity of title, and which commitment will be for a sum sufficient to pay in full ordinary creditors, second mortgages, short-term first mortgages and valid subordinate creditors—(parenthetically, may I add, that there are certain second mortgages which have been placed on for convenience and are not referred to, we are talking about valid bona fide second mortgages and short-term first mortgages, referring to first mortgages which are either due now or the maturity for which will become due within a year) then these proceedings will be dismissed, and during the next one hundred and twenty days this loan will be available for closing. But during this interim, the corporation will be managed by a board of directors, which will consist of one half of representatives of the creditors, and one half of the representatives of the present corporation, and the stock will be placed in a voting trust agreement represented by one half of each group, the creditors and the debtor corporation. ¶ If the commitment is not produced within twenty

their lawyers were present in court. None made known to the court any objection to the stipulation.

At the February 3 hearing counsel for Estate, Inc., one of the secured creditors, moved to have the petition dismissed in accordance with the stipulation. Counsel for the debtor announced to the court that two additional attorneys, engaged the day before, were now associated in the representation of the debtor. These counsel, joined by an attorney for certain unsecured and junior creditors, objected strongly to the validity of the stipulation. They contended that Mr. Recile had not been authorized by the corporation to agree to the stipulation and that the stipulation could not bind creditors. In addition, they made the equitable appeal that if the petition were dismissed and another filed (by creditors), two voidable preferences would be lost. The district judge minced no words in characterizing the debtor's repudiation of the stipulation: "Why would Mr. Recile and the lawyers have entered the stipulation— to flim flam the Court? * * * Well Sir, I certainly don't look upon that with any great favor, of them trying to lead me down the primrose path. * * * If they weren't in good faith, they shouldn't have made this stipulation."

During this hearing the court allowed the lawyers to argue at length on the stipulation and on the good faith issue. Near the conclusion of the hearing all of the lawyers agreed, as Mr. Robert Welch leading counsel for the debtor stated:

"Mr. Steeg is absolutely correct on saying that the proceedings [could] be dismissed. They can be handled in two ways: The Court can ex parte without hearing from all the creditors,

without having notice can dismiss the proceedings. It has the power to do so today without regarding the Stipulation. To further clarify the record, when the Court wants to hear testimony, and I think Mr. Steeg will concur, notices were mailed out of these proceedings on January 6, and therefore either ten days ago—this is under Section 58—thirty days ago, this is under Section 161, notice was given. This again, might be the fault of the corporation. Usually, when a trustee is appointed, the trustee is familiar with it and mails it out, or if the debtor is in possession, he has the responsibility to mail it out. But, in all events, this Court, in our opinion, is proceeding under Section 141 rather than Section 161, and I thought that I would clarify that position. * * * [I]f Mr. Steeg is willing to drop the Stipulation, the Court can proceed on the issue of whether, at this time, the Court should decide on the issue of good faith, or whether the Court should proceed under Section 161, and give the creditors an opportunity to come back after proper notice and provided that, at any session, it make the proper ruling on the good faith issue."

Judge Mitchell stated:

"As Mr. Welch has said, I can proceed to dispense with the matter without regard to the Stipulation. I certainly feel that the Stipulation lured a lot of people, including the Court, into giving more time in this matter. Nonetheless, its been indicated that the Stipulation is not valid. I have some reservations about it, but without regard to the Stipulation, I am going to proceed to dismiss this suit, because I feel that there

days, this proceeding will be dismissed with prejudice. There will be a restraint on the directors and the shareholders of Southern Land and its subsidiaries against renewing the Chapter X application or petition, otherwise they will have full control of their corporation and board, except that they will not be able to vote the stock or vote on the board for a new Chapter X reorganization. It does not preclude any

other rights they may have under the bankruptcy act. ¶ If the commitment is produced, the Chapter X proceeding will also be dismissed, and during the one hundred and twenty day period, as pointed out, the corporation will be under the joint control of the creditors (with the exception of Mr. Brown), and the corporate representatives."

is essentially a lack of good faith in the matter."

As he noted in his Findings of Fact:

"While the Court did not pass on the validity of the agreement made by and between the debtor and creditors present in the courtroom on January 12, 1967, the agreement (stipulation) was considered as an element of evidence, though not conclusive or controlling, that all the debtor sought was delay. The fact that the stipulated agreement was used by the debtor to gain time and was thereafter repudiated by it when this tactic proved futile, is but another indication to the Court of the lack of good faith involved in these proceedings."

The district judge stated in his Conclusions of Law:

"The petition of Southern Land Title Corporation was not filed in good faith under Section 141 of the Bankruptcy Act. The question of good faith is one of fact to be determined by the Judge. The real purpose of these proceedings was to hold the debtor in its present status for the purpose of restraining, delaying and hindering its creditors and to escape from proceedings in other courts, and, therefore, the petition was not filed in good faith."

Neither the attorneys for the debtor nor the attorneys for any creditors indicated that they wished to put witnesses on the stand. They made no proffer of evidence. They did not object to the termination of the hearing.

In the circumstances this case presents, the district court acted within permissible limits of a sound judicial discretion. In re Liberty Mortgage Corporation, D.C. Ohio 1965, 245 F.Supp. 858; Arey v. Russel Lumber Co., Inc. v. American National Bank & Trust Co., 4 Cir. 1953, 201 F.2d 508; Corr v. Flora Sun Corp., 5 Cir. 1963, 317 F.2d 708; In re Grigsby-Grunow Co., 7 Cir. 1935, 77 F.2d 200.

The application for the mandamus is denied. The order of the Honorable David W. Dyer issued February 5, 1967, and the order of this Court issued February 11, 1967, are vacated and set aside.

Considering the collateral issue raised by Meadow Brook National Bank with regard to a certain stay order issued by the Honorable John R. Brown, March 15, 1967, subject to further orders of this Court, that order is also vacated and set aside.